James **CRABTREE**, Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. A. No. 578.

United States District Court
W. D. Arkansas, Texarkana Division.

April 13, 1956.

---

* Now Immigration and Nationality Act 1952, § 349(a), 8 U.S.C.A. § 1481(a).

Van Johnson and Joe Rosenbloom, Texarkana, Ark., for plaintiff.

Charles W. Atkinson, U. S. Atty., and Henry M. Britt, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

LEMLEY, Chief Judge.

This cause, which is an action brought by the plaintiff on two policies of National Service Life Insurance issued to his son, Willard J. Crabtree, is now before the Court upon the Government's motion for summary judgment, which motion has been submitted upon the record in the case and the Government's brief in support of its motion.[1] While the pleadings indicate that there are some minor factual disputes between the parties, the controlling facts necessary for decision are undisputed and may be summarized as follows:

Willard J. Crabtree, the plaintiff's son, while in military service, was issued effective February 1, 1943, a $5,000 National Service Life Insurance certificate in which his mother, Mrs. Ora Crabtree was named as principal beneficiary and his father, the plaintiff, was named as contingent beneficiary; on August 1, 1943, the insured obtained another $5,000 certificate in which his mother was designated as principal beneficiary; the plaintiff claims that he was also designated as contingent beneficiary under that certificate, and while this is denied by the Government, we assume for present purposes that plaintiff was so designated.

On January 28, 1945, Willard J. Crabtree was killed in action, and thereafter Mrs. Crabtree was entitled, as principal beneficiary, to the proceeds of the two insurance policies above mentioned. Thereafter, Mrs. Crabtree was presented with

---

1. While the plaintiff filed a response to the Government's motion, he filed no brief and cited no authority in support of his contentions.

and executed an "Election of Mode of Payment by Beneficiary of National Service Life Insurance" (V.A.Ins.Form 1501). Since Mrs. Crabtree was 56 years of age at the time of the insured's death, she had an option of either receiving payments under these policies in equal monthly installments for 120 months certain with such payments continuing throughout her lifetime, or of receiving a refund life income in monthly installments payable for such period certain as might be required in order that the sum of the installments certain, including a last installment of such reduced amount as might be necessary, should equal the face value of the contract, less any indebtedness, with such payments continuing throughout her lifetime, Mrs. Crabtree selected the first of those optional methods of payment. The amount of her monthly payments was $30.90 upon each $5,000 policy, making a total of $61.80 per month. Had she elected to receive a "refund life income," her monthly payments would have been $28.65 under each of the $5,000 policies, or a total of $57.-30, with 175 monthly payments guaranteed.[2] The form signed by Mrs. Crabtree contained a statement to the effect that settlement under either one of the options should be considered a full and complete settlement of all liability under the contract, and the instructions on the reverse side of said form contain the statement, "Only beneficiary first receiving payment may make an election."

As pointed out, Mrs. Crabtree elected to receive equal monthly payments for 120 months certain with such payments continuing throughout her life. She received 119 of these payments, totalling $7,354.20, and then died; after her death the Government paid the plaintiff the remaining installment of $61.80, and contends that such payment discharged in full its obligations under the policies. The plaintiff takes the position, however, that he is entitled to receive the difference between the total payments made to Mrs. Crabtree and to him and the face values of the policies, which difference amounts to $2,584. In support of that position, he contends that Mrs. Crabtree and the Government had no right or authority to "enter into an agreement which would deprive him of his rights under the insurance purchased by his deceased son in 1945"; and he also contends that Mrs. Crabtree left a will in which she bequeathed to him "whatever is left" of her son's insurance. There is no merit in either of those contentions.

Since Mrs. Crabtree was more than thirty years of age at the time of her son's death, the rights of the parties hereunder are governed by the provisions of 38 U.S.C.A. § 802(h) (2) and (3). Section 802(h) (2) provides that payment of the proceeds of insurance maturing prior to August 1, 1946, shall be made as follows:

"If the beneficiary to whom payment is first made is thirty or more years of age at the time of maturity, in equal monthly installments for one hundred and twenty months certain, with such payments continuing during the remaining lifetime of such beneficiary: *Provided*, That the Administrator, under regulations to be promulgated by him, may include a provision in the insurance contract authorizing the insured or the beneficiary to elect, in lieu of this mode of payment and prior to the commencement of payments, a refund life income in monthly installments payable for such period certain as may be required in order that the sum of the installments certain, including a last installment of such reduced amount as may be necessary, shall equal the face value of the contract, less any indebtedness, with such payments continuing throughout the lifetime of such beneficiary: *Provided further*, That such optional settlement shall not be available in any case in which such settlement would result in payments of installments over a shorter period than one

2. The foregoing figures are based upon the tables of values appearing on the reverse side of the form which Mrs. Crabtree signed and which has been mentioned.

hundred and twenty months: *Provided further,* That in any case in which insurance benefit payments were commenced prior to September 30, 1944, the beneficiary, whether or not the first beneficiary, shall have the right to elect to receive a refund life income, as provided in such optional settlement, payable in monthly installments adjusted as of the date of the maturity of such policy, credit being allowed for payments previously made on the insurance. The right of election with respect to cases in which benefit payments were commenced prior to September 30, 1944, shall terminate two years after August 1, 1946. \* \* \* "

Section 802(h) (3) provides that:

"Any installments certain of insurance remaining unpaid at the death of any beneficiary shall be paid in equal monthly installments in an amount equal to the monthly installments paid to the first beneficiary, to the person or persons then in being within the classes hereinafter specified and in the order named, unless designated by the insured in a different order— \* \* \*

"(C) if no widow, widower, or child, to the parent or parents of the insured who last bore that relationship, if living, in equal shares; \* \* \*."

Veterans Administration Regulation No. 3479, which was in force at the time Mrs. Crabtree made her election, provides that where a beneficiary is 30 or more years of age at the death of the insured, the monthly installments will be paid throughout the lifetime of the beneficiary but if the beneficiary dies before 120 such installments have been paid, the remaining unpaid installments will be payable in accordance with the beneficiary provisions of the policy; and Veterans Administration Regulation No. 3451 provides that upon due proof of death of the first beneficiary after payment has been made of at least one installment, thereafter monthly payments in the same amount shall be paid to the person or persons entitled as beneficiary until all of the installments certain shall have been paid.

■■ Those statutory provisions and regulations, which appear to us to be plain and unambiguous, were binding on the insured and on both Mr. and Mrs. Crabtree and were part of the insurance contracts. Jones v. U. S., 8 Cir., 189 F. 2d 601; Burk v. U. S., D.C.Ark., 133 F. Supp. 63. By virtue thereof, Mrs. Crabtree had the right to make the election that she did and her action in that regard was binding upon the plaintiff. Since before her death she had collected 119 of the 120 payments certain, the extent of the Government's obligation to the plaintiff was to pay him the one remaining installment which, as stated, was done. Thus the plaintiff has received "whatever was left" of his son's insurance.

This means, of course, that the Government will discharge its obligations under the policies issued to Willard J. Crabtree by payments amounting to substantially less than the face amounts of the two policies, but that is immaterial. This situation arises because of the fact that in determining the amounts of the monthly payments to be made to a beneficiary, the Veterans Administration has by regulation provided that said amounts shall be computed upon an actuarial basis, taking into consideration the age of the beneficiary at the time of the death of the insured. By examining the table of values contained in Veterans Administration Regulation No. 3450, it is immediately apparent that the 120 monthly payments certain will not amount to the face value of the policy. The validity of that regulation was considered by the Supreme Court in United States v. Zazove, 334 U.S. 602, 68 S.Ct. 1284, 92 L. Ed. 1601, where the whole problem was considered and discussed in detail, and the regulation was upheld. In so holding, the Supreme Court expressly recognized, as the Veterans Administration itself had recognized, that where a beneficiary died within the 120-month period, the total payments made up to the time of the beneficiary's death and to be made

for the remainder of said period would not total the face of the policy. While this may seem unjust and inequitable, it should be remembered that the premiums charged for National Service Life Insurance were extremely low, and, further, that had Mrs. Crabtree continued to live, she would ultimately have received substantially more than the face amount of these policies; and it should also be recognized that she could have protected herself and her husband from the consequences of her early death by electing the refund life income.[3]

Let an order be entered sustaining the defendant's motion and dismissing this cause with prejudice and at the plaintiff's cost.

See also 106 F.Supp. 804.

---

3. As a matter of fact, it was to enable the avoidance of such a result that Congress provided for an optional refund life income in 1944. See U. S. v. Zazove, supra, 334 U.S. at pages 620–624, 68 S. Ct. 1284.